UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TRUSTEES of the PAVERS and ROAD BUILDERS  :
DISTRICT COUNCIL WELFARE, PENSION, and    :
ANNUITY FUNDS, *et al.*,                   :
                                           :
                          Plaintiffs,      :        REPORT AND
                                           :        RECOMMENDATION
            -against-                      :
                                           :        23-CV-2680 (HG)(MMH)
SITE FENCING, INC.,                        :
                          Defendant.       :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

   Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension,

and Annuity Funds and the Trustees of the Local 1010 Apprenticeship, Skill Improvement,

and Training Fund ("the Funds") sued Defendant Site Fencing, Inc., allegation violations of

the Employee Retirement Income Security Act of 1974 as amended, 29 U.S.C. §§ 1001 *et seq.*

("ERISA") and the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA")

(*See generally* Compl., ECF No. 1.)[1]  Before the Court is Plaintiffs' motion for default

judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b).

(*See generally* Mot., ECF No. 21.)[2]  The Honorable Hector Gonzalez referred the motion for

---

[1] All citations to documents filed on ECF are to the ECF document number (*i.e.*, "ECF No. ___")
and pagination "___ of ___" in the ECF header unless otherwise noted.

[2] The motion papers include the Notice of Motion (Mot., ECF No. 21); the declaration of Keith
Loscalzo (Loscalzo Decl., ECF No. 22) and its four supporting exhibits (Loscalzo Decl. Exs. A–
D, ECF Nos. 22-1 through 22-4); the declaration of Joseph Montelle (Montelle Decl., ECF No. 23)
and its eight supporting exhibits (Montelle Decl. Exs. E–L, ECF Nos. 23-1 through 23-8); the
declaration of Philip Wilson (Wilson Decl., ECF No. 24) and its three exhibits (Wilson Decl. Exs.
M–O, ECF Nos. 24-1 through 24-3); the declaration of Adrianna R. Grancio (Grancio Decl., ECF
No. 25) and its 16 exhibits (including a proposed default judgment) (Grancio Decl. Exs. P–FF,
ECF Nos. 25-1 through 25-16); a memorandum of law (Pl. Mem., ECF No. 26); and a certificate
of service for the default motion papers (ECF No. 28.)

report and recommendation.  For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part** and that Plaintiffs should be awarded damages as set forth herein.

## I.    BACKGROUND

### A.    Factual Allegations

The following facts are taken from the Complaint and documents incorporated by reference into the Complaint, and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

The Funds are employee benefit plans within the meaning of ERISA.  (Compl., ECF No. 1 ¶ 4.)  Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated within the meaning of the LMRA.  (*Id.*)

Defendant is a corporation incorporated under the laws of the State of New York and was an employer engaged in an industry affecting commerce within the meaning of ERISA and the LMRA.  (*Id.* ¶ 5.)  Defendant maintains its principal executive office at 11-13 Sylvester Street, Westbury, New York 11590 and maintains a business address located at 143-14 94th Avenue, Jamaica, New York 11435. (*Id.* ¶¶ 6–7.)

At all relevant times, Defendant was bound by a Project Labor Agreement ("PLA") regarding work performed on behalf of the New York City School Construction Authority. (Loscalzo Decl. Exs. A–C, ECF Nos. 22-1 through 22-3.)  Through the PLA, Defendant was bound to a collective bargaining agreement (the "CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 ("the Union") covering the period between July 1, 2021 through June 30, 2024.  (Compl., ECF No. 1 ¶ 8; Loscalzo Decl. Ex. D, ECF No 22-4

(CBA).)  The CBA incorporated Trust Agreements which permit Plaintiffs to establish rules for the administration of the CBA.  (*Id.* ¶ 10.)

Pursuant to the CBA, Plaintiffs established the Policy for Collection of Delinquent Fringe Benefit Contributions (the "Collection Policy").  (*Id.* ¶ 11.)  Under the CBA, Defendant is required to remit specified benefit contributions to the Funds and specified dues check-offs and other contributions to the Union ("union assessments") issued in a single payment.  (*Id.* ¶¶ 12–14.)  Defendant is required to remit contributions to the Funds on or before the 35th day following the close of the month in which the hours were worked.  (*Id.* ¶ 15.)  The amounts of the contributions are determined by multiplying specific hourly contribution rates by the number of hours worked performed in a respective reporting period.  (*Id.*)  To enable the Funds to administer the contributions requirement, Defendant was required to submit remittance reports to the Funds detailing the number of hours worked by employees, also before the 35th day.  (*Id.* ¶¶ 16, 22.)

Under the Collection Policy, if an employer is delinquent in making contributions and did not submit the required remittance reports, the Funds are entitled to estimate the amount of delinquent contributions for each month. (*Id.* ¶ 17.)  Pursuant to the CBA and Collection Policy, if any employer fails to pay contributions when due, the employer is liable for interest on the unpaid contributions at the annual rate of ten percent, liquidated damages in the amount of ten percent of the unpaid contributions, and attorneys' fees if necessary to collect.  (*Id.* ¶¶ 18–20.)

Plaintiffs allege that Defendant failed to remit benefit contributions and union assessments for the period between September 2021 through January 2022, and November 2022.  (*Id.* ¶ 23.)  Plaintiffs also allege that Defendants failed to submit reports detailing the

number of hours worked by its employees for the period between February through April 2022, July 2022, and January and February 2023, and accordingly, owes the Funds contributions for this same period.  (*Id.* ¶ 24.)  Plaintiffs further claim that Defendant owes interest for previous late payment for contributions for March and April 2019, July 2019, and August through November 2022. (*Id.* ¶ 25.)

On or about September 21, 2022, Plaintiffs served a demand letter on Defendant but the amounts remain outstanding.  (*Id.* ¶¶ 26–27.)

### B.    Procedural History

Plaintiffs initiated this action on April 10, 2023.  (Compl., ECF No. 1.)  After several attempts, the Funds served Defendant with the Summons and Complaint through New York's Secretary of State.  (Aff. of Service, ECF No. 9.)[3]  After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against Defendant on May 26, 2023. (Entry of Default, ECF No. 19.)  On June 26, 2023, Plaintiffs moved for default judgment and damages.  (*See generally* Mot., ECF No. 21.)  Plaintiffs served Defendant with the motion for default judgment at Defendant's last known business addresses, by electronic mail, and by personal service at the last known addresses of Defendant's principal. (Cert. of Service, ECF No. 28.)  Judge Gonzalez referred the motion for report and recommendation. (June 29, 2023 Order Referring Mot.)

## II.    <u>STANDARD FOR DEFAULT JUDGMENT</u>

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104

---

[3] Plaintiffs attempted service on Defendant at multiple locations using various methods.  (Grancio Decl., ECF No. 25 ¶¶ 5–14; *id.* Exs. Q–AA, ECF Nos. 25-2 to 25-9.)

(2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter default. Fed. R. Civ. P. 55(a). If a claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter judgment. Fed. R. Civ. P. 55(b)(1). *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021). To enter or effectuate judgment, the Court is empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." Shah *v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up). The Court must draw all reasonable inferences in favor of the movant. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, "a default only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265 (E.D.N.Y. 2019) (cleaned up).

## III.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and

(3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6331 (MKB), 2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and entirely unresponsive, defendant's failure to respond is considered willful.") (cleaned up). Because Defendant was properly served, its failure to respond or otherwise appear in this action demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *Finkel v. Gaffney-Kroese Elec. Supply Corp.*, No. 22-CV-1777 (DG)(TAM), 2023 WL 2579165, at *4 (E.D.N.Y. Feb. 22, 2023), *adopted by* Order Adopting R. & R., No. 22-CV-1777 (E.D.N.Y. Mar. 10, 2023); *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB)(SJB), 2019 WL 1130729, at *3 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). Accordingly, this factor weighs in favor of default judgment.

Third, the Funds will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09

(E.D.N.Y. 2017).  In other words, because Defendant has failed to respond or otherwise appear in this action, without the entry of default judgment, the Funds would be unable to recover the unpaid contributions and dues assessments.  *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub. nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP) 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

Based on the foregoing, entry of default judgment is permissible.  The Court now turns to the issue of liability.

IV.    <u>**LIABILITY**</u>

A.    **ERISA**

Section 515 of ERISA provides that an employer "obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *Trs. of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at *3 (E.D.N.Y. Aug. 10, 2022).  To establish a violation of section 515, Plaintiffs must plausibly allege that Defendant is: (1) an employer; (2) bound by a CBA that required payment of contributions; and (3) failed to make those contributions.  *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308 (RPK)(SJB), 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022).

The facts alleged in the Complaint establish Defendant's liability.  First, Plaintiffs allege that Defendant is an employer in an industry affecting commerce and the Funds are employee benefit plans within the meaning of ERISA.  (Compl., ECF No. 1 ¶¶ 4–5.)  Next, Plaintiffs allege that Defendant was bound by CBAs that required Defendant to remit benefit contributions to the Funds and assessments to the Union issued in a single payment.  (*Id*. ¶¶ 12–14.)  Specifically, Defendant was bound by a PLA that incorporated the CBA.  (Loscalzo Decl. Exs. A–C, ECF Nos. 22-1 through 22-3.)  Pursuant to the CBA, Defendant was required to pay contributions on behalf of its employees to each of the Funds, in amounts specified in the CBAs.  (Loscalzo Decl. Ex. D, ECF No. 22–4 at 2 (art. IX § 1).)  Pursuant to the CBA, Defendant was also required to submit remittance reports detailing the number of hours by the employees. (Loscalzo Decl. Ex. D, ECF No. 22–4 at 2–3 (art. IX § 1).  Lastly, Plaintiffs allege that Defendant failed to make contributions and failed to submit remittance reports pursuant to its obligations.  (Compl., ECF No. 1 ¶¶ 23–24, 27.)

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' ERISA claim for unpaid contributions.

## B.    LMRA

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  "Under the LMRA, if an employer fails to make contributions to employee benefit plans as required by an agreement, [the employer] may be held liable." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (citation omitted).

Here, the facts alleged in the Complaint also establish Defendant's liability under the LMRA.  First, Plaintiffs allege that they are trustees of multiemployer labor management trust funds operating in accordance with the LMRA.  (Compl., ECF No. 1 ¶ 4.)  Second, Plaintiffs allege that Defendant is an "employer in an industry affecting commerce within the meaning . . . of the LMRA."  (*Id.* ¶ 5.)  Next, Plaintiffs allege that Defendant was bound by a PLA, which incorporated the CBA that required Defendant to make contributions to the Union.  (*Id.* ¶¶ 8–9, 13–15.)  Plaintiffs also allege that pursuant to the CBA, Defendant was required to submit remittance reports to the Funds detailing the number of hours worked by its employees.  (*Id.* ¶ 16.)  Finally, Plaintiffs allege that Defendant failed to make those contributions and failed to submit remittance reports pursuant to its obligations.  (*Id.* ¶¶ 23–24, 27.)  "Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA."  *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' LMRA for unpaid dues and assessments.

## V.    <u>DAMAGES</u>

As Defendant's liability has been established, the Court turns to evaluate damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty."  *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-

CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up). Courts must determine damages "with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "To evaluate the proposed damages, the court 'may rely on detailed affidavits or documentary evidence.'" *Focus Constr. Grp.*, 2023 WL 7687844, at *2 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; and (e) other relief the court deems appropriate." *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER), 2020 WL 9814085, at *4 (E.D.N.Y. Feb. 25, 2020), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER) (E.D.N.Y. Mar. 21, 2020) (citing 29 U.S.C. § 1132(g)(2)).

Further, "although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*,

No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019), *adopted sub nom. by Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) (citation omitted).

Here, Plaintiffs seek the following damages: (1) confirmed delinquent contributions and union assessments, (2) estimated delinquent contributions and union assessments, (3) ten percent interest on all delinquent contributions, (4) ten percent interest on liquidated damages, (5) late payment interest, (6) attorneys' fees and costs, and (7) post-judgment interest.  (Pl. Mem., ECF No. 26 at 13–20.)  To support these requests, Plaintiffs rely on the declarations of Keith Loscalzo, an officer of the Union (Loscalzo Decl., ECF No. 22); Joseph Montelle, the Funds' administrator (Montelle Decl., ECF No. 23); Philip Wilson, Plaintiffs' Accounting Manager from a third-party administrator, Zenith American Solutions, Inc. ("Zenith") (Wilson Decl., ECF No. 24); and Adrianna R. Grancio, Plaintiffs' counsel (Grancio Decl., ECF No. 25), along with supporting exhibits.

### A.    Delinquent Contributions and Union Assessments

Plaintiffs seeks contributions and union assessments based on whether Defendant submitted the required remittance reports pursuant to the CBA.  As noted, Defendant was required to submit reports detailing the number of hours worked by each employee 35 days after the close of the month during which the work was performed.  (Loscalzo Decl. Ex. D, ECF No. 22–4 at 2 (art. IX § 1(c)).)  Under the Collection Policy, when an employer fails to submit remittance forms, Plaintiffs may estimate the amount of delinquency.  (Montelle Decl., ECF No. 23 ¶ 16; Montelle Decl. Ex. G, ECF No. 23-3 at 9 (Collection Policy art. IV § 9).)  From September 2021 through January 2022 and November 2022, Defendant submitted

reports confirming the number of hours worked by the employees; therefore, for this time period, Plaintiffs request unpaid contributions, unpaid union assessments, interest on the unpaid contributions and assessments, and liquidated damages pursuant to these reports ("Confirmed Damages").  (Pl. Mem., ECF No. 26 at 14, 20.)  As explained in detail below, Plaintiffs also seek the same damages owed to the Funds between February 2022 through April 2022, July 2022, and January through February 2023 pursuant to the Collection Policy ("Estimated Damages") because during this period, Defendant did not submit reports confirming the number of hours worked by employees.  (*Id.* at 14–15.)

### 1.    Confirmed Contributions and Union Assessments

Plaintiffs seek $30,071.61 in unpaid ERISA contributions and $1,380.30 in unpaid union assessments for the periods September 2021 through January 2022 and November 2022. (Pl. Mem., ECF No. 26 at 20; Montelle Decl., ECF No. 23 ¶ 13; Wilson Decl., ECF No. 24 ¶ 9; Grancio Decl., ECF No. 25 ¶ 28.)

Plaintiffs hired Zenith to monitor various employers, including Defendant, in their payment of benefit contributions and union assessments. (Wilson Decl., ECF No. 24 ¶ 6.)[4] Zenith determined that Defendant failed to pay contributions of $30,071.61 and union assessments of $1,380.30 to the Funds for September 2021 through January 2022 and November 2022 and submits reports to support these figures.  (Wilson Decl., ECF No. 24 ¶ 9; Wilson Decl. Ex. M, ECF No 24-1 (Discrepancy Report).)  The Court has reviewed these reports and finds them to be reasonable and accurate.  *Trs. of Pavers & Rd. Builders Dist.*

---

[4] Zenith monitors overpayments and underpayments of reported contributions and unions assessments, tracks the months for which employers fail to submit reports detailing the number of hours of work employees perform, and prepares reports related to same.  (Wilson Decl., ECF No. 24 ¶¶ 7–8.)

*Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618, at *6 (E.D.N.Y. Sept. 12, 2023), *adopted by* No. 22-CV-5053 (FB)(PK), 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023) (accepting remittance reports to calculate delinquent contributions and union assessments involving the same parties); *see also Cape Mount Heavy Constr.*, 2023 WL 5830338, at *7.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$30,071.61** in unpaid ERISA contributions and **$1,380.30** in unpaid union assessments for the period from September 2021 through January 2022, and November 2022.

### 2.    Estimated Contributions and Union Assessments

Plaintiffs seek $25,313.10 in estimated ERISA contributions and $986.19 in estimated union assessments for the periods February 2022 through April 2022, July 2022, and January through February 2023, when Defendant did not submit monthly remittance reports.  (Pl. Mem., ECF No. 26 at 20; Montelle Decl., ECF No. 23 ¶ 37; Grancio Decl., ECF No. 25 ¶ 28.)

Under the Collection Policy's Estimation Protocol, Plaintiffs calculate the delinquency as "the greater of [] the average monthly payments based on reports [] submitted by the employer for the last three [] months for which payments and reports were submitted or [] the average of the monthly payments based on reports actually submitted by the employer for the last twelve [] months for which payments and reports were actually submitted." (Montelle Decl. Ex. G, ECF No. 23-3 at 9 (Collection Policy art. IV § 9).)

Applying this protocol, Plaintiffs estimated the delinquency for this period using the remittance reports and payment from September 2022 through November 2022, the last three months for which Defendant submitted payment.  (Montelle Decl., ECF No. 23 ¶ 17; Montelle Decl. Ex. H, ECF No. 23-5 (remittance reports); Montelle Decl. Ex. J, ECF No. 23-6

(Estimation Spreadsheet).)   First, using these reports, Plaintiffs determined the total amount of contributions and union assessments paid each month and then calculated the three-month average. (Montelle Decl., ECF No. 23 ¶¶ 22, 24; Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).)[5]  For the period between September 2022 through November 2022, Plaintiffs calculated that the three-month contribution average is $4,383.26. (Montelle Decl., ECF No. 23 ¶ 24; Montelle Decl. Ex. J, ECF No. 23-6 at 1 (Estimation Spreadsheet).)

Second, Plaintiffs estimated the number of hours worked for the delinquent period by dividing the three-month contribution average by the total benefit rate applicable to the period. (Montelle Decl., ECF No. 23 ¶ 25; Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).)  Here, Defendant's delinquency spans two different benefit periods (2021–2022 and 2022–2023), and this calculation was performed for each period. (Montelle Decl., ECF No. 23 ¶ 26; Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet); *id.* Ex. K, ECF No. 23-7 (rates).)  For example, for the period of February 2022 through April 2022, the total benefit rate was $48.51.   (Montelle Decl. Ex. K, ECF No. 23-7 at 1.)   The three-month contribution average ($4,383.29) divided by the benefit rate ($48.51) yields an average of 90.36 hours per month for February 2022 through April 2022. (Montelle Decl., ECF No. 23 ¶ 27; Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).)  Similarly, for the period of July 2022 and January through February 2023, Plaintiffs divided the three-month contribution average ($4,383.29) by the total benefit rate ($50.19) to yield an average of 87.33

---

[5] Plaintiffs determine the total amount of contributions and assessments paid for each month by adding the amounts owed to the Pavers Welfare Fund, Income Replacement Board, Pavers Pension Fun, Pavers Annuity Fund, Local 1010 Training Fund, Local 1010 LECT, NYS LECET, and NYS Laborers Health and Safety Fund. (Montelle Decl., ECF No. 23 ¶ 22.)

hours per month for that period. (Montelle Decl., ECF No. 23 ¶ 27; Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).)[6]

Third, Plaintiffs multiply the average number of hours for the delinquent period by the benefit rate for each respective fund to determine the average contribution due to each fund per month for the delinquency period.  (Montelle Decl., ECF No. 23 ¶ 29.)  Finally, Plaintiffs add the totals for each fund to determine the estimated monthly contributions due to the Plaintiffs and multiplied that by the number of months the employer failed to submit reports. (*Id.* ¶¶ 30, 34.)  Using this methodology, Plaintiffs estimate the following unpaid contributions and union assessments:

| Estimated Damages | | |
|---|---|---|
| *Dates* | *Unpaid Contributions* | *Unpaid Union Assessments* |
| February 2022 – April 2022 | $12,648.50 | $501.50 |
| July 2022, January 2023 – February 2023 | $12,664.60 | $484.68 |
| **TOTAL** | **$25,313.10** | **$986.18** |

(Montelle Decl., ECF No. 23 ¶¶ 34, 36.)  The Court has reviewed Plaintiffs' calculations and finds them to be accurate. (Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).) Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$25,313.10** in unpaid contributions and **$986.18** in unpaid union assessments for the period of periods February 2022 through April 2022, July 2022, and January through February 2023.

---

[6] Plaintiffs subtracted amounts owed to the Heavy Construction Industry Fund from the benefit rates because they do not seek those funds.  (*See* Montelle Decl., ECF No. 23 ¶ 24 n.2.) The Court notes that Montelle's declaration correctly states the amount of contributions and assessments for the months of September through November 2022 ($7,930.02 + $3,488.21 + $1,731.56), but the total amount ($28,736.83) is incorrect.  (*Id.*)

**B.    Interest**

Plaintiffs seek $6,509.82 in interest on unpaid contributions.  (Pl. Mem., ECF No. 26 at 20; Montelle Decl., ECF No. 23 ¶¶ 40, 44; Grancio Decl., ECF No. 25 ¶ 28.)

ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986."  29 U.S.C. § 1132(g)(2).  Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date. (Montelle Decl. Ex. G, ECF No. 23-3 at 3 (Collection Policy art. II § 5).)

Plaintiffs use the same formula to calculate interest for confirmed and estimated delinquent contributions and assessments.  (Montelle Decl., ECF No. 23 ¶ 45.)  Specifically, they: (1) determine the number of days the contributions are late as of June 23, 2023; (2) calculate the daily rate interest by multiplying the contributions due per month by ten percent as provided in the CBA and Collection Policy (3) divide the full year of interest by 365 days; and (4) multiply the daily interest rate by the number of days the contributions are late. (Montelle Decl., ECF No. 23 ¶ 41; Montelle Decl. Ex. L, ECF No. 23-8 (Interest Calculation).)

For example, for September 2021, Defendant owed $6,234.66 in contributions that were due on November 4, 2021 (35 days after the close of the month) as per the CBA and Collection Policy.  (Loscalzo Decl. Ex. D, ECF No. 22-4 at 3 (CBA art. IX § 1); Montelle Decl., ECF No. 23 ¶ 41; Montelle Decl. Ex. L, ECF No. 23-8 (Interest Calculation).)   As of June 23, 2023, the contributions for September 2021 were 596 days late.  The total yearly interest due for the September 2021 contributions was calculated as $623.47 ($6,234.66 x 10%), then divided by 365 days to yield a daily interest rate of $1.71. (Montelle Decl., ECF

No. 23 ¶ 41; Montelle Decl. Ex. L, ECF No. 23-8 (Interest Calculation).)  The daily interest rate was then multiplied by 596 days to yield total interest of $1,019.16 for the September 2021 contributions. Plaintiffs repeated this calculation for September 2021 through January 2022, November 2022, February 2022 through April 2022, July 2022, and January 2023 through February 2023.  (Montelle Decl., ECF No. 23 ¶¶ 42, 45; Montelle Decl. Ex. J, ECF No. 23-6 at 3 (Estimated Interest Calculation).)  The Court has reviewed Plaintiffs' interest calculations and finds them to be correct. (Montelle Decl., ECF No. 23 ¶ 42; Montelle Decl. Ex. L, ECF No. 23-8 (Interest Calculation).)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$6,509.82** in interest calculated through June 23, 2023.

Plaintiffs also request additional interest from June 24, 2023 through the date of judgment and are entitled to this relief.  *Coastal Env't Grp. Inc.*, 2019 WL 4603805, at *11. The Court respectfully recommend that Plaintiffs should be awarded additional interest at a daily rate of **$15.19** from June 24, 2023, through the date of judgment.[7]

### C.    Late Payment Interest

Plaintiffs seek $1,703.88 in late payment interest for the periods of March 2019, April 2019, July 2019, and August through November 2022.  (Pl. Mem., ECF No. 26 at 20; Montelle Decl., ECF No. 23 ¶ 47; Wilson Decl., ECF No. 24 ¶ 19; Grancio Decl., ECF No. 25 ¶ 28.)

---

[7] This daily interest rate was calculated by combining the daily interest rate for all unpaid contribution months ($1.71 (September 2021) + $2.25 (October 2021) + $2.53 (November 2021) + $1.62 (December 2021) + $0.10 (January 2022) + $0.02 (November 2022) + $1.16 (February 2022) + $1.16 (March 2022) + $1.16 (April 2022) + $1.16 (July 2022) + $1.16 (January 2023) + $1.16 (February 2023)) = $15.19. (Montelle Decl. Ex L, ECF No. 23-6 at 3 (Estimated Interest Calculation); *id.* Ex L, ECF No. 23-8 (Interest Calculation.).)  *See USA Roofing Co.*, 2023 WL 6318618, at *8 (calculating the daily interest rate through the date of judgment by combining the daily interest rate for all unpaid contribution months).

Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date. (Montelle Decl. Ex. G, ECF No. 23-3 at 3 (Collection Policy art. II § 5).)

Here, Plaintiffs calculated late payment interest using the same methodology described for calculating interest on the unpaid contributions. (Wilson Decl., ECF No. 24 ¶¶ 17–18; § V.B., *supra*.) Plaintiffs provide a late payment interest report generated by Zenith. (Wilson Decl. Ex. O, ECF No 24-3 (Late Payment Interest Report).). The Court has reviewed these calculations and find them to be correct.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$1,703.88** in late payment interest for the periods of March 2019, April 2019, July 2019, and August through November 2022.

### D.    Liquidated Damages

Plaintiffs seek $5,116.85 in liquidated damages on the unpaid contributions but not on the union assessments. (Pl. Mem., ECF No. 26 at 15, 20; Montelle Decl., ECF No. 23 ¶ 47; Grancio Decl., ECF No. 25 ¶ 28.)

ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). *Coastal Env't Grp. Inc.*, 2019 WL 4603805, at *12 (citing 29 U.S.C. § 1132(g)(2)(C). Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of . . . liquidated damages of ten percent (10%) of the amount of delinquent [c]ontributions owing." (Montelle Decl. Ex. G, ECF No. 23-3 at 3 (Collection Policy art. II § 5).)

Plaintiffs' liquidated damages calculations are partially correct. Plaintiffs accurately calculated the liquidated damages for the period between September 2021 through January 2022 and November 2022 by multiplying the unpaid contributions by ten percent for a total of $3,007.16 (*i.e.*, $30,071.61 x 10%). (Montelle Decl., ECF No. 23 ¶ 42; Montelle Decl. Ex. L, ECF No. 23-8.)  However, for the period between February 2022 through April 2022, July 2022, and January through February 2023, Plaintiffs applied the same formula with the wrong result—*i.e.*, unpaid contributions ($25,313.10) x ten percent (10%) = $2,109.69.  (Montelle Decl., ECF No. 23 ¶ 46; Montelle Decl. Ex. J, ECF No. 23-6 at 3.) By the Court's calculation, ten percent of $25,313.10 is $2,531.31.  Adding this corrected amount to the liquidated damages above equals $5,538.47.  (Montelle Decl. Ex. J, ECF No. 23-6 (Estimation Spreadsheet).)

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$5,538.47** in liquidated damages.

## E.   Attorneys' Fees

Plaintiffs request $6,898.50 in attorneys' fees for 29.4 hours of work. (Pl. Mem., ECF No. 26 at 26; Grancio Decl., ECF No. 25 ¶ 25; Grancio Decl. Ex. DD., ECF No. 25-14 (Attorney Billing Records).)

ERISA allows for an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of…all costs including[] attorneys' fees." (Montelle Decl. Ex. G, ECF No. 23-3 at 3 (Collection Policy art. II § 5).)

District courts have broad discretion to determine the amount of attorneys' fees. *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of*

*Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 7390362, at *9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).

In the Second Circuit, courts calculate a "presumptively reasonable fee" by examining the lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by a case. *Cape Mount Heavy Constr. & Assocs., LLC*, 2023 WL 5830338, at *9. To determine a reasonable hourly rate, the court looks to the hourly rates that attorneys charge for comparable work. *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at *4 (E.D.N.Y. Sept. 28, 2023), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). "The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and necessity of the hours spent and the rates charged." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *10. A request for attorney's fees must include contemporaneous time records that specify for each attorney, the hours expended and the nature of the work done. *Regal USA Concrete, Inc.,* 2023 WL 7413837, at *3. "In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### 1.    Hourly Rate

Plaintiffs request attorneys' fees based on the following hourly rates: (1) $290 for attorney Grancio, who graduated from law school in 2016; (2) $290 for Associate Matthew Vani, who graduated from law school in 2022; and (2) $115 for two legal assistants.  (Pl. Mem., ECF No. 26 at 18-19; Grancio Decl., ECF No. 25 ¶¶ 21–25; Grancio Decl. Ex. DD, ECF No. 25-14 (Attorney Billing Records).)

The ordinary rates for attorneys in the Eastern District of New York are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates.  *Cape Mount Heavy Constr. & Assocs.*, 2023 WL 5830338, at *11.  Courts have also awarded up to $150 for non-attorney support staff.  *USA Roofing Co.*, 2023 WL 6318618 (collecting cases).  The Court finds that the requested hourly rates for attorney Grancio and the legal assistants are consistent with the range of rates awarded.  *Id.*

The rate requested of $290 for attorney Vani, however, is unreasonable. The requested $290 hourly rate for attorney Vani is the same as the requested rate for attorney Grancio, who has six more years of experience, and is inconsistent with the rates awarded for junior associates in this district.  *Id.*  The Court respectfully recommends an hourly rate of $150 is more appropriate for attorney Vani's experience.

### 2.    Reasonable Hours Expended

Counsel requests attorneys' fees based on a total of 29.4 of hours. (Grancio Decl., ECF No. 25 ¶ 25).  Plaintiffs have submitted contemporaneous time records that detail the work performed by their counsel—specifically: (1) 16.3 hours of work performed by attorney Grancio; (2) 3.8 hours by attorney Vani; and (3) 9.3 hours performed by legal assistants. (Grancio Decl. Ex. DD, ECF No. 25-14) (Attorney Billing Records).)  After a careful review

of the records, the Court finds the billed activities to be reasonable and not excessive, redundant, or unnecessary. Additionally, the number of hours expended in this case are consistent with range of reasonable hours expended in ERISA cases involving a default judgment. *See, e.g.*, *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB)(SJB), 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022), *adopted by* 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (awarding 39.4 hours of work in an ERISA default judgment); *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *12 (recommending awarding 48.8 hours for attorneys' fee in ERISA action where plaintiffs' counsel had to review extensive records and prepare a number of detailed declarations).

Accordingly, the Court respectfully recommends an award of **$6,366.50** in attorneys' fees.[8]

### F.    Costs

Plaintiffs seeks $811.04 in costs, including filing fees, costs of service, research fees. and postage. (Pl. Mem., ECF No. 26 at 18–19; Grancio Decl., ECF No. 25 ¶ 27; Grancio Decl. Ex. DD, ECF No. 25-14 (Attorney Billing Records); Grancio Decl. Ex. EE, ECF No. 25-15 (Receipts).)  "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Bd. of Trs. of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc.*, No. 23-CV-1616 (DLI)(MMH), 2024 WL 628808, at *8 (E.D.N.Y. Feb.

---

[8] The total attorneys' fees are calculated as: ($290 × 16.3 hours) (attorney Grancio) + ($150 × 3.8 hours) (attorney Vani) + ($115 × 9.3 hours) (legal assistants) = $6,366.50.

1, 2024), *adopted by* Order Adopting R. & R., No. 23-CV-1616 (DLI)(MMH) (E.D.N.Y. Feb. 22, 2024) (cleaned up).  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiffs are entitled to the filing fee for this case, as the docket reflects that Plaintiffs paid the $402 filing fee.  (ECF No. 1 Dkt. Entry.)  Plaintiffs also submit receipts to support the service costs.  (Grancio Decl. Ex. EE, ECF No. 25-15 (Receipts).)  Plaintiffs do not submit receipt of invoices for postage or research fees.  The contemporaneous billing records, however, show that the requested postage dates match the dates counsel billed for serving documents. (*See* Grancio Decl. Ex. DD, ECF No. 25-14 at 7 (Attorney Billing Records).)  These contemporaneous records are sufficient to support postage costs.  *USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618, at *10 (awarding postage costs without receipts because the date of the requested postage costs matched the dates counsel billed for serving documents).[9]  Counsel also requests research fees, but these are not supported by any evidence and the Court declines to award them.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$785.46** in costs.[10]

---

[9] Notwithstanding this conclusion, the better practice is to include the receipts for the costs incurred.

[10] The recommended costs include the filing fee ($402), service costs ($78 + $150 + $120), and postage ($5.23 + ($0.84 x 2) + $12.26 + $15.69 + $0.60) = $785.46.  (ECF No. 1 Dkt. Entry; Grancio Decl. Ex. DD, ECF No. 25-14 at 7 (Attorney Billing Records); Grancio Decl. Ex. EE, ECF No. 25-15 at 1, 4 (Receipts).)

### G.    Post Judgment Interest

Plaintiffs request post-judgment at the statutory rate. (Pl. Mem., ECF No. 26 at 19–20; Montelle Decl., ECF No. 23 ¶ 47; Grancio Decl., ECF No. 25 ¶ 28).

"[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Accordingly, the Court respectfully recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VI.    CONCLUSION

For all the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 21 should be granted in part as follows: (1) a default judgment should be entered against Defendant[11] and (2) Plaintiffs should be awarded damages in the amount of **$78,655.33** which includes: (a) **$31,451.91** in delinquent contributions and union assessments for the period between September 2021 through January 2022 and November 2022; (b) **$26,299.29** in delinquent contributions and union assessments for the period between February 2022 through April 2022, July 2022, and January through February 2023; (c) **$6,509.82** in interest on the delinquent contributions and union assessments through June 23, 2023; (d) interest on the delinquent contributions and union assessments at the rate of **$15.19** per day from June 24, 2023 until the day of judgment; (e) **$1,703.88** in late payment interest for the period of March 2019, April 2019, July 2019, and August through November 2022; (f)

---

[11] The Plaintiffs' proposed default judgment (ECF No. 25-16) should be amended to reflect the recommendations herein.

**$5,538.47** in liquidated damages on the unpaid ERISA contributions; (g) **$6,366.50** in attorneys' fees; (h) **$785.46** in costs; and (i) post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation to Defendant Site Fencing, Inc. as the following addresses forthwith: (1) Site Fencing, Inc. c/o Beecher LaFrance, 1393 Chicago Avenue, Bayshore, New York  11706; (2) Site Fencing, Inc. c/o Beecher LaFrance, 9820 SE 146th Place, Summerfield, Florida 34491; (3) Site Fencing, Inc. 11-13 Sylvester Street, Westbury, New York  11690; and (4) Site Fencing, Inc. 143-14 94th Avenue, Jamaica, New York 11435.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Gonzalez.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 11, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge